**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**CHRISTOPHER ALAN EVERETT**                                            **PLAINTIFF**
**ADC #152664**

**VS.**                                        **NO.  1:19-CV-00115 DPM-PSH**

**BRUCE WINSTON,** *et al*.                                            **DEFENDANTS**

<u>**Statement of Facts**</u>

Come now the Independence County Defendants—Bruce Winston, Chris Morris, Shawn Stephens, and Sissy Wilson, in their personal and official capacities—and offer the following statement of undisputed material facts in support of their summary-judgment motion, under Fed. R. Civ. 56 and Local Rule 56.1:

1.        On September 26, 2018, Plaintiff Christopher Alan Everett (Mr. Everett), was arrested and booked into the Independence County Detention Facility (ICDF) based on charges of theft by receiving, aggravated assault upon a law enforcement officer, and second-degree battery. *See* Exhibit A, Affidavit of Deneschia Lynn Wilson, Exhibit A1, p. 2.

2.        On January 31, 2019, Mr. Everett was discharged from the adult psychiatric unit at White River Health System and returned to the ICDF with instructions to be placed on suicide watch.  He was transported back to the ICDF by Defendant Morris.

3.        In an incident report regarding the incident on January 31, 2019, Mr. Everett stated:

> I was being escorted from sally port to my cell just coming back from the hospital jailer Winston and jailer Morris Slammed me on the floor of the cell where jailer Winston started hitting me in the head after slamming me on the floor other inmates where out on there rec and inmate Steven Ziller came to the door and asked why they were assaulting me when jailer Morris and jailer Winston realized there were witnesses to what they were doing jailer Winston ordered jailer Morris to lock the other inmates down when jailer morris left the cell to lock down the other inmates down jailer Winston picked me up by schkles and slammed me on the wall and putting me into a head lock and stated "he was gonna cut my air wave's off if I

1

did'nt stop creaming for help" at that time jailer Croslin was present and telling jailer Winston to back off and release me I had severe witness they were inmates – Steven Ziller / Mike Jhonson / Brandon Webster / Brandon Lay / Donnie Hyde/ Jason Smith / Jason Lelja / Will Bullard / Pillip Morris / Kavon Beasley / Tyler Cursin / Joseph Tim England / Jhontlan Rossleter.

*See* Exhibit A3, p. 3.

4.      In his report regarding the incident on January 31, 2019, Defendant Morris referred

to the type of incident as "Inmate combative and refusing orders" and wrote:

> On 01-31-2019 I Deputy Bailiff Chris Morris brought Inmate Christopher Everett from White River Medical Center to the Independence County Jail. When proceeding to put IM Everett on suicide watch. When IM Everett was told to go into cell H1 he refused and said that he wasn't going on suicide watch. I then escorted him to the cell. When I told IM Everett to go to his knees he refused to do so and I then put IM Everett face down on the ground to take the leg shackles off of him. When attempting to do so IM Everett started to resist orders kicking and screaming. While holding IM Everett down he Kicked myself and Deputy Bailiff Bruce Winston. While Winston held IM Everett's Head down IM Everett attempted to bite Winston. At that time another Inmate came to hold a door open I went and held the door and told the group of inmates to lock down. Winston then stood IM Everett up and put him in the corner closest to the door and put IM Everett in a shoulder pin restrain. When IM Everett complied we put him on his side to remove his restraints. I removed his handcuffs and his belly chain and Winston removed his Leg Shackles. Winston then removed his pants and I removed his shirt. I then provided IM Everett with a suicide prevention suit and blanket. I then left the cell and exited the intake housing unit.

*See* Exhibit A3, p. 4.  *See also* Exhibit D, Affidavit of Christopher Morris, ¶ 5.

5.      In his incident report regarding the incident on January 31, 2019, Defendant

Winston referred to the type of incident as "Combative Inmate" and wrote:

> At approximately 3:17 PM I (Officer Winston) met Officer Morris at the sally port hall doors. Officer Morris was bringing Inmate Christopher Everett back from the hospital. Everett was to be placed back on suicide watch per the Hospital.
>
> Inmate Everett started mouthing that he would not go back on suicide watch as soon as he entered the sally port hall, he continued to mouth as he was taken to H1 the padded cell.
>
> Upon reaching the padded cell inmate Everett began to get combative and unresponsive to orders. Inmate Everett disregarded multiple orders to kneel down

on the floor so restrains could be removed. Inmate Everett became combative; He was kicking, biting, and scratching as I was trying to hold him so his restraints and clothing could be removed.

Inmate Everett was screaming that he was being killed the whole while that officer Morris and I were trying to remove his restraints and clothing. As we were trying to get Everett on the floor to remove everything he started to kick, scream, and tried to bite my hand. While we were working to gain control of Everett inside the padded cell other inmates came to the door, Officer Morris backed away to tell the other inmates to get away and lock down.

At this time I had Everett pinned to the floor and was trying to maintain control of him. I pulled my spray and stated that if he didn't stop kicking and comply he would get sprayed. As I was standing up with my spray in my hand he kicked at me and a .2 second burst was deployed into the wall with some overspray getting on Everett. The majority hit the wall as it was an inadvertent deployment of spray due to him kicking my leg.

To be able to get Everett under control I had to use a blood choke (Sleeper Hold) until he was near unconscious.

Inmate Everett was then placed on the ground and everything was removed from him.

Inmate Everett never totally lost consciousness but became more compliant. After everything was removed from him he was closed into cell H1 the padded cell. I went to him approximately 15 minutes after he was secured in the cell to allow him to decontaminate. At that time Everett stated that some overspray got on him and he washed it off with a wet cloth and washed the spot off the wall too.

At that time Inmate Everett was alert and compliant.

*See* Exhibit A3, p. 5-6.  *See also* Exhibit C, Affidavit of Bruce Winston II, ¶ 5.  Defendant Winston

wrote the same narrative in a "summary of incident" that he signed on February 1, 2019.  *See*

Exhibit A3, p. 7.

6.     A use of force report was prepared by Defendant Winston after the incident on

January 31, 2019.  *See* Exhibit A3, p. 2.  The report states that one .2-second burst of OC chemical

spray was administered during the incident.  *Id*.  The report also states that the chemical agent had

no effect on Mr. Everett and after the spray was administered, Mr. Everett was permitted to wash

the chemical off.  *Id*.

      7.     An incident report was prepared by Jerry Croslin, a nonparty member of ICDF staff

on February 1, 2019, in which Croslin wrote:

> On the date and time above I went to intake to assist Winston and Morris with
> Inmate Everett.  Everett was refusing to go back on suicide watch after returning
> from Stepping Stone.  When I entered Winston and Morris had Everett in the
> padded cell.  Inmate Everett appeared very red in his face and losing conscious.
> Winston seemed to have him in a headlock from my view I could not tell if he was
> being choked or pressure points was being used.  Winston them dropped him to the
> floor and inmate Everett became compliant with his orders.

*See* Exhibit A3, p. 8.

      8.     On February 4, 2019, Mr. Everett submitted a written grievance stating:

> I came back from hospital around 3ish on thurs Jan 31 was in shackels and
> handcuffs with belly chain ask to speak to a sargint because they were putting me
> back on suicide watch when Morris rough handle me into the suicide cell
> aggrasvlley for no reson and slammed me on the floor and [unintelligible] Winston
> keep hitting me on the head I was scream help and Winston forcibly peper sprayed
> me then aggasively pick me up and slam me against the wall where he put me in a
> chock hold and said that he was gonna put my airways out if I didn't stop saying
> help I was in shackles and [unintelligible] whole time I want to press charges
> against these two officers.

*See* Exhibit A2, p. 13.  Defendant Wilson responded on February 7, 2019, stating: "you were

placed back on suicide watch per the hospital."  *Id*.

      9.     On February 12, 2019, Mr. Everett submitted a written grievance stating, "I wrote

a grivence about 2 of your officers beating me up while in shakle's and ask for you to let me press

charges on them and all you said was the hospital told you to put me on suicide watch but that

wasnt what I wrote the grievance about it was because of your officer's beat me up while in

shakle's and handcuff"  *See* Exhibit A2, p. 14.  Defendant Wilson wrote in response: "I do not

understand what your grievance is other than a complaint."  *Id*.

10.     On February 26, 2019 Mr. Everett submitted a written grievance stating:

> Ms. Sissy I have been assaulted twice since I been here the first was the first day I got here and the last was when I came back from hospital while I was in hand cuffs and shackles 'Morris said he [unintelligible]' what happen were Winston beat on me and was choke me I am in fear of my life and well being  being in this county with the Guards that beat on me still employed here I ask if you will let me go to Conway were I have warrants and be he there till my court date I have been talking to my lawyer about a law suit so I feel my life isn't here if I am not removed my lawyer will take actions needed yall

*See* Exhibit A2, p. 15.  Defendant Wilson responded to the grievance on February 27, 2019 by stating, "You cannot transfer until you are done with us.  Your next court date is March 26th pretrial.  Jury trial May 8[th]-10[th]" *Id.*

11.     Mr. Everett did not submit a grievance or sick call request or any type of request for medical care related to the January 31, 2019, incident.  In his multiple grievances about the incident, Mr. Everett did not mention or request medical care.  *See* Exhibit A2, p. 13, 14 & 15; Exhibit A3, p. 3.

12.     At Mr. Everett's request, the Arkansas State Police, Criminal Investigation Division, conducted an investigation of Mr. Everett's allegation that he was assaulted by Defendants Winston and Morris.  *See* Exhibit A4, p. 1-3.  In his *Investigative Summary* of Case # ASP-2019-1012, on September 9, 2019, State Police Sergeant Sean Riegle wrote:

> On July 22, 2019, I, SA Sean Riegle, met with Detective Zach Rawlins of the Independence County Sheriff's Office (ICSO) in reference to an inmate alleging he was assaulted by Jail staff on three (3) separate occasions between the dates of September 26, 2018 and May 10, 2019.  Prosecuting Attorney Eric Hance requested the assistance of the Arkansas State Police (ASP) to conduct an investigation.  Det. Rawlins provided me with a complete copy of the victim, Inmate Christopher Everett's, jail file.
>
> ***
>
> On January 31, 2019, Detention Officer Bruce Winston documented on a use of force report for the use of OC spray and going hands-on with Inmate Everett.  The details of that report are as follows:

Detention Officer Christopher Morris returned Inmate Everett from WRMC where he has to be placed back on suicide watch per the physician.  Inmate Everett was wearing leg shackles and handcuffed with belly chains while being escorted to the padded cell.  Inmate Everett became verbally and physically combative and refused to comply with officer's commands when ordered to kneel down so his restraints could be removed.

Officer Winston pinned Inmate Everett to the ground and threatened to use OC spray if he didn't calm down and stop fighting.  According to Officer Winston, he (Winston) was coming to his feet with the OC spray in his hand when Inmate Everett kicked at him, causing him to accidentally discharge his OC spray, which mostly struck the wall while getting overspray on Inmate Everett.  Officer Winston stated that in an attempt to gain control of Inmate Everett, he used a sleeper hold (blood choke) on him until he was near passing out, due to restricted blood flow to the brain.  Officer Winston stated that he then placed Inmate Everett on the ground without further incident.  Inmate Everett's restraints and clothing was removed and he was able to wash the OC spray from his skin.

Officer Morris stated that Officer Winston placed Inmate Everett in a "rear naked choke hold" and it appeared his face was turning red and he may have lost consciousness for a few seconds.

***

On May 23, 2019, Sgt. Zach Rawlins of the ICSD conducted an interview with Inmate Everett.  Inmate Everett made the allegations of Devon Ditto and Bruce Winston beating him up on several occasions.  Inmate Everett also stated that Winston choked him out in the padded cell while he was in restraints.  Inmate Everett also stated that while he was incarcerated in the Arkansas Department of Corrections (ADC), he sued ADC because he was having heart attack and they did not give him proper treatment.

On August 28, 2019, I conducted an interview with Bruce Winston at the Independence County District Court Building.  Winston stated during the interview that he did place Inmate Everett in a cardiovascular choke, because Inmate Everett was combative and trying to harm officers.

***

A copy of this case file will be forwarded to the Prosecuting Attorney's office for review.

*See* Exhibit A4, p. 1-3.

6

13.     In a letter dated November 15, 2019, addressed to the Arkansas State Police, a deputy prosecutor declined to pursue charges against Defendant Winston for the January 31, 2019 incident.  *See* Exhibit A5, p. 1-3.  The deputy prosecutor recounted the fact that when Mr. Everett was arrested and transported to the ICDF on September 26, 2018, he "was combative to jailers and intake officers" and he "battered multiple officers, bit one matron jailer, and spat on the jailers as they attempted to restrain him"—resulting in his guilty plea in July 2019 to three counts of felony assault and one count of felony battery, along with the theft by receiving charge for which he was originally arrested.  *Id*. at 1.

14.     Regarding Mr. Everett's allegation of assault against him by Defendant Winston on January 31, 2019, the deputy prosecutor recounted the fact that on January 25, 2019, Mr. Everett attempted to commit suicide by swallowing a handful of pills and was transported to a mental health facility for treatment.  *See* Exhibit A5, p. 2.  Defendant Morris transported Mr. Everett back to the ICDF on January 31, 2019, and Mr. Everett "was to be placed back on suicide watch at the jail per hospital orders."  *Id*.  The deputy prosecutor wrote the following about what happened on January 31, 2019:

> As Deputy Morris escorted Everett through the sally port hall, Everett stated that he would not be going back to the suicide cell.  As Deputies Winston and Morris walked Everett to the padded cell, Everett became combative and would not respond to multiple orders to go into the cell so that his restraints and clothing could be removed, per protocol of the padded cell used for suicide watch.  Everett began kicking, biting and scratching Deputy Winston.  As the deputies attempted to gain control of Everett, other inmates came to the door, at which time Deputy Morris stepped away from Everett to keep other inmates out and lock them down to their cells.  Deputy Winston held Everett to the floor and pulled his OC pepper spray. Deputy Winston instructed Everett to comply with orders or be sprayed.  As Deputy Winston attempted to stand, Everett kicked Winston and inadvertently deployed a 0.2 second burst of Deputy Winston's OC pepper spray into the wall, with some overspray hitting Everett.  Deputy Winston, standing behind Everett, placed his hands and arm around Everett's neck in a pressure point hold.  After a few moments of apparent unconsciousness, Deputies Winston and Morris helped Everett to the floor and Everett did not resist further.  At that time, Deputies Winston and Morris

7

removed all restraints and clothing per protocol for Everett's placement into the padded suicide cell. Everett was provided with a suicide prevention suit and blanket and Deputies Winston and Morris exited the cell without further incident.

Cpl. Riegle has in his investigation included other reports of incidents at the jail regarding Inmate Everett for which restraint was required, but none of which allege criminal activity. These incident reports and witness statements serve to further detail and indicate the types of combative, non-compliant, threatening and violent behavior displayed by Inmate Everett. These reports further detail Inmate Everett's desire to harm himself and attempted efforts to commit suicide.

It is my position that the amount of force used the January 31, 2019 incident detailed above were both justified and appropriate under the circumstances at the time, considering Inmate Everett's previous history of combative, volatile, violent, suicidal behavior and jailers/officers responses and attempts to diffuse the same. The Prosecuting Attorney's Office is therefore exercising its discretion under those circumstances in declining to prosecute Deputy Winston at this time.

While my review of this matter does not address best practices, training, or other internal law enforcement or jail policy and procedure issues, they may be considered in the totality of the circumstances. Notwithstanding that consideration, Independence County Sheriff Shawn Stephens has taken remedial measures to ensure that Deputy Winston is sufficiently trained regarding the protocol in the padded cell and the use of force upon inmates. After this initial incident of January 31, 2019, Sheriff Stephens removed Deputy Winston from his duties as Bailiff from the criminal court and transferred him to act as Bailiff of the court for civil cases. Sheriff Stephens has also indicated that he will be issuing a written warning/reprimand for Deputy Winston's personnel file regarding the January 31, 2019 incident. Further, Sheriff Stephens has indicated discussing with Deputy Winston the appropriate measures to be used in the padded cell. Additionally, Sheriff Stephens is requiring Deputy Winston to participate in remedial training for use of force through the ALETA law enforcement standards training.

*Id.* at 2-3.

15.    Prior to the January 31, 2019 incident, Defendant Winston and Defendant Morris completed CLEST-certified training courses and were trained regarding use of force. *See* Exhibit C, ¶ 3; Exhibit D, ¶ 3.

16.    Prior to the January 31, 2019 incident, Defendant Winston and Defendant Morris were provided with copies and reviewed the Independence County Sheriff's Department policies regarding use of force. *See* Exhibit C, ¶ 3; Exhibit D, ¶ 3.

8

17.     ICDF policy in effect at all relevant times, provided: "The jail shall be operated in a constitutional manner in compliance with the Arkansas Jail Standards and shall provide a safe living environment for inmates and a safe working environment for the staff."  Exhibit A6, p. 1.

18.     ICDF policy in effect at all relevant times, provided: "It is the responsibility of each inmate to give notice of any and all requests for action, utilizing the grievance procedures and/or the sick call procedures."  Exhibit A6, p. 1.  "It is the responsibility of the staff to respond in writing to each and every written sick call or grievance request."  *Id*.

19.     ICDF policy in effect at all relevant times, provided: "An inmate is entitled to appropriate and necessary medical, dental, and mental health care."  Exhibit A6, p. 2.

20.     ICDF policy in effect at all relevant times, provided: "Unless an emergent medical condition exists . . . medical complaints must be written on a Request for Medical/Dental Treatment in the space on the form where it requests information relative to the complaint." Exhibit A6, p. 6.  "Jail officers will be required to accept all Medical/Dental treatment requests." *Id*.  "It will be the responsibility of health care personnel to assure that all Medical Requests are collected each day, and that an evaluation is conducted to prioritize each inmate's medical complaints in terms of needed health care within 24 hours of that request."  *Id*. at p. 7.

21.     ICDF policy in effect at all relevant times, provided: "Inmates confined in the [ICDF] will be permitted to file grievances and will be assured of written responses from jail officials in a timely and orderly manner without fear of reprisal or prejudice."  Exhibit A6, p. 8. A "grievance" is defined as "a written complaint made to the Jail Administrator by an inmate concerning policy, procedure, conditions or actions by staff that may directly affect the inmate personally."  *Id*.

22.     ICDF policy in effect at all relevant times, provided: "Law Enforcement Officers

shall use only that force which is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another." Exhibit A6, p. 13. ICDF staff are required, if possible, to begin and escalate to different levels of force in a defined sequence— however, "[i]t is impossible to control at which level of force any particular use of force incident will begin or how quickly and in what steps it might escalate." *Id.*, p. 14.

23. ICDF policy in effect at all relevant times, provided that law enforcement officers may be armed with OC spray upon completion of qualification training, and use of OC spray is authorized "to defend the officer or another person from what the officer reasonably believes is the imminent use of physical force, or to restore institutional integrity in a detention facility." Exhibit A6, p. 20. "[O]ne of the purposes of OC is to create a visible deterrent to potential offenders." *Id.* "When all reasonable efforts have failed to calm a person who is acting violently and presenting a definite danger to his or her self or others, a minimum stream may be fired at the person in accordance with the manufacturer's recommendations and training received." *Id.*

24. At the time when Defendant Winston placed Mr. Everett in a sleeper hold on January 31, 2019, Defendant Winston believed this was necessary to control Mr. Everett, given his refusal to obey orders and his violent and threatening behavior toward Defendant Winston, including biting and kicking Defendant Winston. *See* Exhibit C, ¶ 6. Defendant Winston believed that force was necessary to bring Mr. Everett under control in order to place him in the padded cell, remove his restraints, and prepare him for suicide watch. *Id.* Defendant Winston believed that the sleeper hold he used was the least force that he could use to successfully bring Mr. Everett under control. *Id.* Another option would have been to spray Mr. Everett with OC spray, but Defendant Winston believed that to be a more severe force option, he hoped that would not be necessary, and it wasn't. *Id.*

10

25.     Defendant Winston did not intend to deploy OC spray during the incident on January 31, 2019.  *See* Exhibit C, ¶ 7.  Defendant Winston did intend to warn Mr. Everett that Winston would use the spray if necessary, in the hope that this would convince Mr. Everett to calm down and comply with orders so that Winston could remove his restraints and prepare him for suicide watch.  *Id*.  Defendant Winston's OC spray deployed very briefly—for approximately two-tenths of a second, when Mr. Everett kicked Winston as Winston held the spray.  *Id*.  The spray deployed directly against the wall, with some overspray getting on Mr. Everett.  *Id*.  Defendant Winston allowed Mr. Everett to decontaminate after he became calm and compliant, approximately 15 minutes after the incident.  *Id*.

26.     Defendant Winston did not use further force against Mr. Everett on January 31, 2019.  *See* Exhibit C, ¶ 8.  Winston did not slam Mr. Everett's face into the ground, or punch him, or use any additional force against him beyond that described above.  *Id*.

27.     Defendant Winston did not observe any injury to Mr. Everett following the incident on January 31, 2019.  *See* Exhibit C, ¶ 9.  Mr. Everett did not have a busted lip, bloody nose, or visible welts, bruising, or swelling on his head or neck—and Winston did not deploy any force against him that would cause such injury.  *Id*.  Mr. Everett did not make a request for medical care to Winston, or to Winston's knowledge, to anyone else, after the incident.  If Mr. Everett had indicated that he was injured or requested medical care, Winston would have ensured that medical care was promptly provided per policy.  *Id*.

28.     Defendant Morris observed the force used by Defendant Winston in the January 31, 2019, incident, and Morris believes Winston's use of force was necessary and reasonable under the circumstances.  *See* Exhibit D, ¶ 6.

29.     At the time when Defendant Morris used the force described in his incident report

against Mr. Everett on January 31, 2019, Morris believed this was necessary to control Mr. Everett, given his refusal to obey orders and his violent and threatening behavior.  *See* Exhibit D, ¶ 6.  Morris believed that force was necessary to bring Mr. Everett under control in order to place him in the padded cell, remove his restraints, and prepare him for suicide watch.  *Id*.

30.     Defendant Morris did not use further force against Mr. Everett on January 31, 2019, beyond what he described in his incident report.  *See* Exhibit D, ¶ 7.  Morris did not slam Mr. Everett's face into the ground, or punch him, or use any additional force against him.  *Id*.

31.     Defendant Morris did not observe any injury to Mr. Everett following the incident on January 31, 2019.  *See* Exhibit D, ¶ 9.  Mr. Everett did not have a busted lip, bloody nose, or visible welts, bruising, or swelling on his head or neck—and Morris did not deploy any force against him that would cause such injury.  *Id*.  Mr. Everett did not make a request for medical care to Morris, or to Morris' knowledge, to anyone else, after the incident.  If Mr. Everett had indicated that he was injured or requested medical care, Morris would have ensured that medical care was promptly provided per policy.  *Id*.

32.     ICDF Jail Administrator and Defendant Sissy Wilson was not personally involved with the incident involving Mr. Everett on January 31, 2019.  *See* Exhibit A, ¶ 10.

33.     Independence County Sheriff and Defendant Shawn Stephens was not personally involved with the incident involving Mr. Everett on January 31, 2019.  *See* Exhibit B, Affidavit of Shawn Stephens, ¶ 4.

34.     Jail Administrator Wilson did not personally observe any injury to Mr. Everett following the incident on January 31, 2019.  *See* Exhibit A, ¶ 13.  Mr. Everett did not make a request for medical care to Wilson, or to Wilson's knowledge, to anyone else, after the incident, orally or in writing.  *Id*.  If Mr. Everett had indicated that he was injured or requested medical care,

Wilson would have ensured that medical care was promptly provided per policy, and Wilson would expect her employees to do the same.  *Id*.

35.    Sheriff Stephens did not personally observe any injury to Mr. Everett following the incident on January 31, 2019.  *See* Exhibit B, ¶ 7.  Mr. Everett did not make a request for medical care to Stephens, or to Stephens' knowledge, to anyone else, after the incident, orally or in writing. *Id*.  If Mr. Everett had indicated that he was injured or requested medical care, Stephens would have ensured that medical care was promptly provided per policy, and Stephens would expect his employees to do the same.  *Id*.

36.    After the incident involving Mr. Everett on January 31, 2019, because a use of force report was prepared by Deputy Winston and because Mr. Everett submitted grievances and requests in which he alleged that he was assaulted by Deputies Winston and Morris on January 31, 2019, Sheriff Stephens and Jail Administrator Wilson investigated the incident.  *See* Exhibit A, ¶ 11; Exhibit B, ¶ 5.  The investigation included interviews of Deputies Winston and Morris and Deputy Jerry Croslin, who also witnessed the incident, as well as interviews of Mr. Everett and other witnesses.  *Id*.  Additionally, Sheriff Stephens and Jail Administrator Wilson cooperated with and required deputies to cooperate with the State Police investigation that was opened at Mr. Everett's request.  *Id*.  The internal investigation concluded that Deputy Morris did not use excessive force against Mr. Everett on January 31, 2019, and Deputy Winston violated policy by allowing his OC spray to discharge in a situation where it was not warranted (involving an inmate who was in restraints in the padded cell).  *Id*.  The State Police investigation concluded that Deputies Winston and Morris did not use excessive force against Mr. Everett on January 31, 2019. *Id*.  A deputy prosecutor with jurisdiction over Independence County declined to pursue criminal charges against Deputy Winston or any other ICDF employee.  *Id*.

13

37.     After the January 31, 2019 incident, Sheriff Stephens temporarily reassigned Deputy Winston to different duties to allow him to obtain additional training on use of force through the ALETA academy.  *See* Exhibit A, ¶ 12; Exhibit B, ¶ 6.  Sheriff Stephens also issued a written warning/reprimand to Deputy Winston regarding the January 31, 2019 incident.  *Id*.  *See also* Exhibit A7.

38.     Independence County Sheriff Shawn Stephens and Independence County Detention Facility Jail Administrator Sissy Wilson do not condone or allow excessive force, including violations of policies regarding use of force and OC spray, by employees of the Sheriff's Department.  *See* Exhibit A, ¶ 9; Exhibit B, ¶ 3; Exhibit C, ¶ 4; Exhibit D, ¶ 4.  Employees are trained regarding use force, and if an employee is found to have acted with excessive force in violation of policy, the employee is disciplined.  *See id*.

Respectfully submitted,

SISSY WILSON, SHERIFF SHAWN STEPHENS, BRUCE WINSTON and CHRIS MORRIS, in their personal and official capacities

By:     Colin R. Jorgensen, Ark. Bar No. 2004078
ASSOCIATION OF ARKANSAS COUNTIES
RISK MANAGEMENT SERVICES
1415 W. Third
Little Rock, Arkansas 72201
Telephone (501) 372-7947
email: CJorgensen@ARCounties.org

## Certificate of Service

I hereby certify that on January 14, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, which will provide electronic notice to CM/ECF participants.  I further certify that I provided a copy to Plaintiff's counsel via email: lane@thelanefirm.com.

/s/ Colin R. Jorgensen